# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CATHY JOHNSON and RANDAL JOHNSON, on behalf of themselves and all others similarly situated**<br><br>Plaintiffs,<br><br>v.<br><br>**WAL-MART STORES, INC., and WALMART.COM, USA, LLC,**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) No. 3:15-CV-00775-DRH-DGW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## THIRD AMENDED CLASS ACTION COMPLAINT

## I.   PARTIES, JURISDICTION, AND VENUE

Upon information and belief, Plaintiffs Cathy Johnson and Randal Johnson (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

1. Plaintiff Cathy Johnson is an adult resident and citizen of Madison County, Illinois.

2. Plaintiff Randal Johnson is an adult resident and citizen of Madison County, Illinois.

3. Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business in Arkansas.

4. Defendant Wal-mart.com, USA, LLC, is a California limited liability company; the sole members of which are Wal-Mart Stores East, LP and Wal-Mart Stores, Inc. Wal-Mart Stores East, LP is a Delaware limited partnership, of which WSE Management, LLC is the only general partner, and WSE Investment, LLC is the only limited partner. The sole member of WSE Management, LLC and of WSE Investment, LLC is Wal-Mart Stores East, LLC. The sole member of Wal-Mart Stores East, LLC is Wal-Mart Stores, Inc. As stated above, Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business in Arkansas.

5. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d) because Plaintiffs' claims are part of a class action in which the amount in controversy exceeds the sum of $5,000,000 and the class contains citizens of different states than the Defendants.

6. Plaintiffs purchased items from Defendants' website to be shipped to their home in the Southern District of Illinois. Defendants' violations of the Illinois Deceptive Trade Practices Act ("IDTPA") <u>and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")</u>, described below, harmed Plaintiffs in the Southern District of Illinois.

7. Venue is thus proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims took place in the Southern District of Illinois.

## II.     FACTUAL BACKGROUND

8.     Plaintiffs are unsophisticated consumers who purchased goods from Defendants' website for household use.

9.     Plaintiffs are also patriotic Americans who prefer to purchase goods made in the United States rather than imported goods, and are willing to pay a premium for American-made goods. <u>In this regard, Plaintiffs are similar to other American consumers who are willing to pay more for American made goods.</u>

10.    Defendants' website is accessible nationwide and ships products to people all over the country and throughout the world.

11.    On their website, Defendants advertised certain products as being "Made in the USA," "Assembled in the USA," and "Origin of Components USA." This is part of the overall "Made in the USA" campaign, which is the major advertising strategy of Wal-Mart. <u>Wal-Mart knows that many customers will pay a premium for American-made items and intends for customers to rely upon its "Made in the USA" designations in their purchasing decisions.</u>

12.    <u>Items designated as being American made or sourced were marked with a prominent red, white, and blue icon on Defendants' website. Some of these icons have now been removed, with respect to those items that Plaintiffs or non-party organizations have identified as being mis-labeled.</u>

13. On multiple occasions, including in July of 2015, Plaintiffs ordered products from Defendants' website that were advertised on the website as being "Made in the USA," "Assembled in the USA, or "Origin of Components USA." These products included Era 2X Ultra Active Stainfighter Formula Regular Liquid Detergent, Microfiber Wax Applicator Pads, various forms of Great Value plastic cutlery, L'Oreal Brow Stylist Sculptor Eyebrow Pencil, and Equate Sensitive Skin Unscented Body Wash.

14. <u>Plaintiffs saw the website icons designating the foregoing items as "Made in the USA," "Assembled in the USA, or "Origin of Components USA." Plaintiffs were willing to pay more for these items because of these designations.</u>

15. Plaintiffs later determined that many of the items they ordered were not made in the USA. <u>Plaintiffs were damaged in that they paid a price premium for the foregoing products which were incorrectly designated. Plaintiffs also did not receive the benefit of their bargain because they intended to support American manufacturing, American jobs, and the American economy with their purchases.</u>

16. The packaging on many of the products revealed that they were made in another country. For example, the packaging of the Microfiber Wax Applicator Pads and the Great Value cutlery stated that these items were made in China. According to the packaging, the Always Ultra Thin Overnight Pads with Flexi-Wings were assembled in Canada, and the Equate Sensitive Skin Body Wash was

made in Canada. The L'Oreal Brow Stylist Sculptor Eyebrow Pencil was made in the Czech Republic. Even in the fine print of the "about this item" section, the website stated unequivocally that the cutlery, the body wash, and the eyebrow pencil were assembled in the USA from American components.

17.     Attached hereto as Exhibit "A" is the Federal Trade Commission's ("FTC") *Enforcement Policy Statement on U.S. Origin Claims*. This document provides guidance to manufacturers and merchants regarding the use of "Made in USA" and similar type claims in marketing and advertising.

18.     As this guidance makes clear, A Made in USA claim can be express or implied. Examples of express claims**:** Made in USA. "Our products are American-made." "USA."  Likewise, depending on the context, U.S. symbols or geographic references (for example, U.S. flags, outlines of U.S. maps, or references to U.S. locations of headquarters or factories) may convey a claim of U.S. origin either by themselves, or in conjunction with other phrases or images.

19.     For a product to be called Made in USA, or claimed to be of domestic origin without qualifications or limits on the claim, the product must be "all or virtually all" made in the United States. The term "United States," as referred to in the Enforcement Policy Statement, includes the 50 states, the District of Columbia, and all U.S. territories and possessions. "All or virtually all" means that all

significant parts and processing that go into the product must be of U.S. origin. That is, the product should contain no — or negligible — foreign content.

20. Moreover, when a manufacturer or marketer makes an unqualified claim that a product is Made in USA, it should have — and rely on — a "reasonable basis" to support the claim at the time it is made. This means a manufacturer or marketer needs competent and reliable evidence to back up the claim that its product is "all or virtually all" made in the U.S.

21. 19 C.F.R. § 134.46 provides that: In any case in which the words "United States," or "American," the letters "U.S.A.," any variation of such words or letters, or the name of any city or locality in the United States, or the name of any foreign country or locality other than the country or locality in which the article was manufactured or produced appear on an imported article or its container, and those words, letters or names may mislead or deceive the ultimate purchaser as to the actual country of origin of the article, there shall appear, legibly and permanently, in close proximity to such words, letters or name, and in at least a comparable size, the name of the country of origin preceded by "Made in," "Product of," or other words of similar meaning.

22. In a *Federal Register* notice announcing amendments to this provision, the Customs Service indicated that, where a product has a foreign origin, any references to the United States made in the context of a statement relating to any

<u>aspect of the production or distribution of the product (*e.g.,* "Designed in USA," "Made for XYZ Corporation, California, U.S.A.," or "Distributed by ABC, Inc., Colorado, USA") would be considered misleading to the ultimate purchaser and would require foreign country-of-origin marking in accordance with the above provision. 62 Fed. Reg. 44,211, 44,213 (1997).</u>

23. Many of the items purchased by Plaintiffs, including makeup, laundry soap, and garbage bags are consumable household items that Plaintiffs did in the past and intend in the future to purchase on a regular basis. Because of Defendants' illegal and fraudulent mis-labeling, Plaintiffs cannot know in the future whether such products are actually made, assembled, and/or sourced in the USA or not.

24. Because the items are relatively inexpensive household consumables, and because Plaintiffs maintain a strong preference for American-made products, knowledge that a product is not, in fact, made, assembled, and/or sourced in the USA would lead Plaintiffs to choose a competing product made in the USA. Plaintiffs are damaged in the amount they spent on the falsely-advertised products because they did not get the benefit of their bargain, which included supporting American jobs and the quality of American-made goods.

25. Since Plaintiffs filed suit, Defendants <u>appear to have removed some</u> icons proclaiming that items are made, assembled, or sourced in the USA. Defendants have done so in response to an inquiry by the Federal Trade

Commission, which thereafter stated that "it would not pursue action against Walmart because the retailer had taken voluntary steps to 'prevent consumer deception.'" http://madeinusanews.com/2015/10/20/walmart-removes-made-in-usa-logos-from-website-after-government-inquiry/ (last accessed October 22, 2015). These steps were taken long after Plaintiffs and other consumers were actually deceived.

26. <u>In addition, notwithstanding Defendants' removal of some icons from the website, without injunctive relief there is no guarantee that Defendants will not resume their deceptive practices regarding the labeling and advertising of their products. Defendants have a history of mislabeling their products and therefore there is a likelihood that Defendants may resume their illegal conduct without injunctive relief.</u>

27. <u>For example, the FTC issued a Decision and Order against Wal-Mart, Docket No. C-3870 for alleged violations of the labeling requirements of the Textile Fiber Products Identification Act and the Wool Products labeling Act. See Exhibit "B" attached hereto. Recently, in June 2015, Wal-Mart reached a settlement over claims that it had mislabeled its Great Value cornstarch as "All-Natural." http://legalnewsline.com/stories/510549647-walmart-reaches-settlement-in-class-action-lawsuit-over-cornstarch-label (last accessed Jan. 7, 2016).</u>

28. Truth In Advertising.org ("TINA"), a watchdog group, originally alerted the FTC to the erroneous "Made in USA" labeling on Wal-Mart's website. Despite the fact that the FTC has since dropped its investigation because of changes to the website, TINA states in an update on its website that "not all misrepresentations had indeed been removed." www./truthinadvertising.org/.walmart-deceptive-usa-claims/ (last accessed Jan. 6, 2006. TINA also states that it has alerted Wal-Mart that misrepresentations remain. Id.

### III. CLASS ALLEGATIONS

29. Plaintiffs bring this action on their own behalf and on behalf of all persons in Illinois pursuant to Rule 23 of the FEDERAL RULES OF CIVIL PROCEDURE. At this time, the Illinois class which Plaintiffs seek to represent is composed of and defined as:

> All persons or consumers in Illinois during the Class Period, up through the date the case is certified and notice is disseminated, who purchased products from Walmart.com that were labeled "Made in the USA," "Assembled in the USA," or "Origin of Components, USA" or were otherwise labeled as "USA-sourced" items, including but not limited to the following products: (1) Microfiber Wax Applicator Pads; (2) Great Value cutlery; (3) Equate Sensitive Skin Body Wash; and (4) the L'Oreal Brow Stylist Sculptor Eyebrow Pencil. Excluded from the Class are: (a) Defendants' Board members or executive-level officers, including its attorneys; (b) persons or entities who purchased the products primarily for resale; (c) retailers or re-sellers of the products; (d) governmental entities, including this Court; and (e) any consumer that already received a refund from Defendants.

32. <u>On information and belief, Defendants sold other products that were mis-labeled in the same manner as the foregoing products. Accordingly, Plaintiffs reserve their right to amend this Class definition until after discovery has been completed in order to name additional products that were sold in a deceptive and misleading manner.</u>

33. <u>In accordance with Rule 23(c) of the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiffs also seek to represent similarly situated consumers from the following states: California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.[1] The Seventh Circuit in *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), approved a similar approach for representing other subclasses, including all nine states that Plaintiffs seek to include here. The Northern District of Illinois granted certification and the Seventh Circuit affirmed. Id. at 657.</u>

34. This action has been brought and may be properly maintained as a class action pursuant to the provisions of Rule 23(a), Rule 23(b)(2) and 23(b)(3) of the

---

[1] As described below, the Illinois laws in question are 815 ILCS 510/2 and 815 ILCS 505/2. The other states are California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Cal. Bus. & Prof. Code § 17200, et seq.; Fla. Stat. § 501.201 et seq.; Mich Stat. §445.901 et seq.; Minn Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq. The Seventh Circuit affirmed certification of a multi-state class alleging violations of these laws in *Mullins*. 795 F.3d 654 (7th Cir. 2015).

FEDERAL RULES OF CIVIL PROCEDURE, and satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements thereof.

35. Wal-Mart is the largest retailer in the world and states on its website that "[e]very day, millions of customers visit Walmart.com." Walmart also heavily advertises its "made in America" products, so a significant number of those visitors purchase such products. A significant portion of those purchasers reside in the identified states of the class and subclasses, which include four of the five largest states in the United States. Therefore, the plaintiff class is so numerous that the individual joinder of all members is impracticable. The class meets the numerosity requirement of Fed. R. Civ. Proc. 23(a)(1).

36. Common questions of law and fact, including whether Wal-Mart did label imported products as made in the USA, predominate over any questions which affect only individual members of the class. The class meets the commonality requirement of Fed. R. Civ. Proc. 23(a)(2).

37. Plaintiffs' claims are typical of the claims of the members of the class under Fed. R. Civ. P. 23(a)(3). The Plaintiffs and all members of the class sustained damages arising out of Defendants' common course of conduct in violation of the law as complained herein. The losses of each member of the class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

38. Plaintiffs named herein will fairly and adequately protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs have no interests which are adverse to the interests of absent class members. Plaintiffs, like all class members, purchased goods from the website that were marked with the American-made icon.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. Proc. 23(b) because individual joinder of all class members is impracticable. Furthermore, because the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual class members to redress the wrongs done to them. Individual litigation would likewise burden the court system to a much greater degree than a class action, and would present the potential for inconsistent or contradictory judgments. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## IV.   CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF IDTPA

40. Plaintiffs incorporate by reference paragraphs 1-39 of this Complaint as if fully set forth herein.

41. The Uniform Deceptive Trade Practices Act, codified in Illinois at 815 ILCS 501/1 et seq., makes it a deceptive trade practice to use "deceptive representations or designations of geographic origin in connection with goods or services." 815 ILCS 510/2(a)(4).

42. Defendants violated 815 ILCS 510/2(a)(4) by placing an icon on their website stating that items were made in the USA when, in fact, they were not.

43. Defendants have violated this section repeatedly and willfully, intentionally using "Made in the USA" labels to confuse and defraud shoppers.

44. <u>Because of Defendants' history of mislabeling products it sells there is a likelihood of future misconduct.  Accordingly, Plaintiffs, and the class(es) they represent, are entitled to injunctive relief as well as costs and attorneys' fees under 815 ILCS 510/3.</u>

## COUNT II
## VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

45. Plaintiffs incorporate by reference paragraphs 1-44 of this Complaint as if fully set forth herein.

46. 815 ILCS 505/2 makes it an unfair or deceptive act or practice to engage in any activity that violates 815 ILCS 510/2. Because Defendants violated 815 ILCS 510/2(a)(4), they also violated 815 ILCS 505/2.

47. Plaintiffs, and the class(es) they represent, paid a premium for these products because of the Defendants' misconduct. The products identified in the Class definition were mislabeled, and Plaintiffs, as well as the class(es) they represent, suffered damages as a result of the purchase. Accordingly, Plaintiffs are entitled under this Act to actual damages calculated by the price of the fraudulently-advertised items they bought, punitive damages, and attorneys' fees.

## COUNT III
## CLAIMS UNDER SIMILAR STATE STATUTES

48. Plaintiffs incorporate by reference paragraphs 1-47 of this Complaint as if fully set forth herein.

49. The other states as noted *supra* in Footnote 1, have deceptive trade practices acts which, as they apply to the facts at issue here, are in substance the same as the Acts referenced in Counts I and II, prohibiting the conduct detailed herein.

50. These other states with similar if not identical law are California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Cal. Bus. & Prof. Code § 17200, et seq.; Fla. Stat. § 501.201 et seq.; Mich Stat. §445.901 et seq.; Minn Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq. On behalf of these subclasses, Plaintiffs assert claims under those statutes for those class members residing in those states.

51. <u>On behalf of the out-of-state class members, Plaintiffs seek actual damages, punitive damages, attorney's fees, and costs.</u>

## COUNT IV
## UNJUST ENRICHMENT

52. Plaintiffs incorporate by reference paragraphs 1-51 of this complaint as if fully set forth herein.

53. As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class and subclasses.

54. Because Defendants' retention of this unjust benefit violates fundamental principles of justice, equity, and good conscience, Defendants should be forced to disgorge all profit unjustly gained from its illegal activities.

## V.   PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs seek the following relief:

(a) following appropriate discovery, an Order certifying this cause as multi-state class action pursuant to Fed. R. Civ. P. 23, with subclasses as the Court deems appropriate, and notice as applicable to the absent class members;

(b) an injunction prohibiting Defendants' future wrongful conduct;

(c) upon a jury verdict, an award of compensatory and punitive damages to compensate Plaintiffs and class members and to punish Defendants and

deter them and others similarly situated from illegal and unpatriotic conduct;

(d) reasonable attorneys' fees as determined by the court;

(e) interest;

(f) costs; and

(g) such other further relief as the Court may deem appropriate.

**Plaintiffs demand trial by struck jury on all counts.**

/s/ John. E. Norris
Attorney for Plaintiffs

**OF COUNSEL**
D. Frank Davis
John E. Norris
Wesley W. Barnett
Dargan M. Ware
Davis & Norris, LLP
2154 Highland Ave.
Birmingham, AL

Peter H. Burke
Burke Harvey, LLC
3535 Grandview Pkwy.
Birmingham, AL

D. Todd Mathews
Gori, Julian & Associates, PC
156 N. Main Street
Edwardsville, IL 62025