IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CATHY JOHNSON and RANDAL
JOHNSON, on behalf of themselves and all
others similarly situated,

    Plaintiffs,

v.                                                                No. 3:15-cv-775-DRH-DGW

WAL-MART STORES INC. and
WAL-MART.COM USA, LLC,

    Defendants.

## I.     INTRODUCTION

On April 19, 2016, Magistrate Judge Donald G. Wilkerson granted the plaintiffs' motion for leave to file a Third Amended Complaint (Doc. 47). Among other claims, the Third Amended Complaint asserts a claim for Violation of the Illinois Uniform Deceptive Trade Practices Act ("IDTPA"). On May 3, 2016, defendants filed a motion appealing the Magistrate Judge's decision as to plaintiffs' IDTPA claim only (Doc. 50). Defendants contend the Magistrate Judge's decision with respect to the plaintiffs' IDTPA claim is clearly erroneous, contrary to Seventh Circuit law, and should be set aside. Plaintiffs have responded in opposition (Doc. 53).

The Court finds the Magistrate Judge's decision, as to the plaintiffs' IDTPA claim, was clearly erroneous. Accordingly, that portion of the decision is **REVERSED.** Additionally, for the reasons discussed herein, the plaintiffs' IDTPA claim is **DISMISSED** with prejudice.

## II. APPLICABLE STANDARDS

### A. Appeal of Magistrate Decision

Local Rule 73.1(a) addresses matters pertaining to the appeal of a magistrate judge's decision on non-dispositive matters[1] and provides as follows:

Appeal of Non-Dispositive Matters - 28 U.S.C. § 636(b)(1)(A)

> Any party may appeal a Magistrate Judge's order determining a motion or matter within 14 days after issuance of the Magistrate Judge's order, unless a different time is prescribed by the Magistrate Judge or a District Judge. The party shall file with the Clerk of Court and serve on all parties a written request for an appeal which shall specifically designate the order or part of the order that the parties wish the Court to reconsider. A District Judge shall reconsider the matter and shall set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. A District Judge may also reconsider *sua sponte* any matter determined by a Magistrate Judge under this rule.

IL R USDCT SD LR 73.1(a).

Also, under FEDERAL RULE OF CIVIL PROCEDURE 72(a), the Court may modify or reverse a decision of a magistrate judge on a non-dispositive issue upon a showing that the magistrate judge's decision is "clearly erroneous or contrary to the law." A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (*quoting United States v. United States Gypsum Co.*, 333 U.S.

---

[1] In general, motions for leave to amend pleadings, and orders thereon, are non-dispositive within the meaning of Rule 72(a). *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir.2006); *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 660 (7th Cir.1999) (*citing United States v. Brown*, 79 F.3d 1499, 1503 (7th Cir.1996)).

364 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *See also Weeks v. Samsung Heavy Industries Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made.").

### B. Amendment of Pleadings

Federal Rule of Civil Procedure 15 governs amendment of pleadings. Rule 15(a)(2) states that a court "should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). However, motions for leave to amend are properly denied and claims are properly dismissed with prejudice when plaintiffs repeatedly fail to cure deficiencies in their complaints or where further amendment would be futile. *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008).

### III. BACKGROUND

This case centers on the claim that, sometime prior to the end of July 2015, defendants incorrectly advertised products online as "Made in USA," "Assembled in the USA," or "Origin of Components USA." Plaintiffs contend they (1) saw the made in the USA designations; (2) were willing to pay a premium for these products because of the designations; (3) purchased various products in reliance on these designations; and (4) were thereby damaged. Plaintiffs further allege the defendants have since removed some of the incorrect designations.

However, plaintiffs contend "there is a likelihood that Defendants may resume their illegal conduct without injunctive relief." (Doc. 48 ¶ 26).

In *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 740-41 (7th Cir. 2014), the Seventh Circuit confirmed that individual plaintiffs cannot allege IDTPA claims when they are aware of the conduct at issue and armed with that knowledge, are able to avoid the harm they complain about in the future. Citing to *Camasta* (and related precedent) defendants assert plaintiffs cannot plead a viable IDTPA claim given (a) their awareness of the purported advertising issue they describe in their Third Amended Complaint and (b) their inability to plead a likelihood of future harm to them because of this knowledge.

In granting leave to amend, the Magistrate Judge concluded plaintiffs sufficiently alleged they purchased products online with incorrect country of origin markings and, despite having knowledge of the alleged issue, could still be harmed in the future. In so holding, the Magistrate Judge acknowledged that a plaintiff cannot state a claim under the IDTPA absent an allegation that he or she will be damaged in the future (Doc. 47 p. 3). However, the Magistrate distinguished the instant case, noting as follows:

> [T]he circumstance complained of here is not akin to the typical consumer action to which Defendants cite. Importantly, Plaintiffs' proposed third amended complaint specifically alleges that "Because of Defendants' history of mislabeling products it sells there is a likelihood of future misconduct." Plaintiffs' complaint is not necessarily limited to a certain product, or certain products; rather, they clearly assert there may be additional products that are improperly labeled. Accordingly, the Court finds that Plaintiffs have stated a sufficient claim under the IDTPA.

(Doc. 47 p. 3).

## IV. DISCUSSION

As noted above, in *Camasta,* the Seventh Circuit acknowledged the general rule applicable to IDTPA claims brought by consumers under Illinois law: Such claims are only viable where the consumer can show the defendant's conduct will likely cause the consumer harm in the future. *Camasta,* 761 F.3d at 740-41. "The problem inherent in such consumer actions is the inability to allege facts which would indicate that the plaintiff is 'likely to be damaged.' Ordinarily, the harm has already occurred, thus precluding a suit for injunctive relief." *Brooks v. Midas–Int'l Corp.*, 47 Ill.App.3d 266, 5 Ill.Dec. 492, 361 N.E.2d 815, 821 (1st Dist. 1977).

Here, the Court's decision turns on the type of knowledge that is sufficient to enable the consumer to avoid future harm. The Magistrate Judge felt this case was distinguishable, concluding the plaintiffs' knowledge of the defendants' deceptive conduct is not sufficient to protect them from future harm because, unlike the typical consumer action relied on by the defendants, the plaintiffs' complaint is not limited to specific products. Rather, the plaintiffs' complaint involves deceptive sales practices that could be used to mislabel thousands of products. Plaintiffs seize on this, arguing because the allegedly fraudulent marketing scheme could be used to advertise an array of products, they are not armed with the kind of knowledge that will prevent future harm.

The Court respectfully disagrees with this line of reasoning. Although many of the cases cited by the defendants involve deceptive conduct that is connected to a single product or line of products, such a connection is not determinative. Rather, the relevant question is whether knowledge of the deceptive conduct enables the plaintiff to invoke his or her power as a consumer to somehow avoid future harm. For example, in *Kljajich v. Whirlpool Corporation,* 2015 WL 8481973, (N.D. Ill. Dec. 10, 2015) (Eve, J.), the plaintiff alleged Whirlpool made misrepresentations about its ovens' self-cleaning cycle. The district court concluded, in relevant part, that the plaintiff's awareness of this deceptive conduct prevented her from alleging future harm. Specifically, the court concluded that because the plaintiff was aware of the deceptive statements, she could avoid future harm by "invok[ing] her power as a consumer to avoid choosing Whirlpool's products." *Id.* at 4. Although not expressly stated in *Camasta,* presumably, knowledge of the retailer's practice of advertising normal retail prices as temporary price reductions was sufficient to avoid future harm because, armed with that knowledge, the consumer could refuse to do business with that retailer. *See also Glazewski v. Coronet Insurance Co.* (1985), 108 Ill.2d 243, 253, 91 Ill.Dec. 628, 483 N.E.2d 1263 ("plaintiffs know the problems [ ], and armed, with that knowledge, can avoid it. Thus the plaintiffs are not persons who are 'likely to be damaged' by defendants' conduct in the future").[2]

---

[2] An example of a case where knowledge of the deceptive sales practice is not sufficient to prevent future harm is *Brennan v. AT & T Corp.*, 2006 WL 306755, *5 (S.D. Ill. Feb. 8, 2006) (Herndon, C.J.). In *Brennan*, the plaintiff was initially harmed by the defendant's deceptive practices even though she had never chosen to do business with the defendant. Accordingly, the undersigned

Here, plaintiffs know the problems associated with any product advertised as being "Made in the USA" (and the like). That knowledge, standing alone, allows plaintiffs to avoid future harm by refusing to do business with the defendants and/or declining to make purchasing decisions premised on any claim that the product is "Made in the USA" (or the like). This is so regardless of the fact that that the deceptive sales practice could be used to mislabel any number of products. The bottom line is, under the circumstances at issue in this case, the plaintiffs' awareness of the defendants' tendency to mislabel products means the plaintiffs can avoid future harm by exercising consumer choice. Moreover, without more than a speculative claim regarding future harm, they are not entitled to injunctive relief under the IDTPA. *Camasta,* 761 F.3d at 741.

Accordingly, the Court reverses the Magistrate Judge's April 19, 2016 Order to the extent that it granted plaintiff leave to file an amended complaint asserting a claim under the IDTPA.

## V. CONCLUSION

For the foregoing reasons, the April 19, 2016 Order is reversed in part. Further, in light of this Court's ruling, any amendment to the plaintiffs' IDTPA

---

concluded, despite plaintiff's knowledge of the deceptive sales practice, plaintiff could not "easily avoid [future harm] by refusing to do business with [the defendant]. Unlike the plaintiff in *Brennan,* the plaintiffs in this case can avoid future harm by refusing to do business with the defendant.

claim would be futile. Accordingly, the plaintiffs' IDTPA claim is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Signed this 14th day of July, 2016.

Digitally signed by Judge David R. Herndon
Date: 2016.07.14 13:38:27 -05'00'

**United States District Judge**